UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-60913-CIV-DAMIAN/Strauss

ROBERT GILL,

      Plaintiff,

v.

CITY OF MARGATE and
KYLE WOOLLEY

      Defendants.

_____/

ORDER ON DEFENDANT CITY OF MARGATE'S
MOTION TO DISMISS THE AMENDED COMPLAINT [ECF NO. 13]

**THIS CAUSE** is before the Court upon Defendant, City of Margate's (the "City"),

Motion to Dismiss the Amended Complaint [ECF No. 13 (the "Motion")], filed June 11,

2025.

THE COURT has reviewed the Motion, the parties' briefing [ECF Nos. 15 and 19],

the pertinent portions of the record, and the applicable law and is otherwise fully advised. For

the reasons set forth below, the Motion is granted.

## I.      BACKGROUND

### A. Factual Allegations.

As alleged in the Amended Complaint, on April 8, 2023, Plaintiff, Robert Gill

("Plaintiff" or "Gill"), was seated outside his residence wearing only a pair of shorts when

members of the City's police department, including Defendant, Kyle Woolley ("Officer

Woolley"), arrived at Gill's residence. *See* ECF No. 8 ("Amended Complaint") ¶¶ 9–10. Gill

alleges that when the officers arrived, he was seated, unarmed, and at "no time a threat to any

police officer." *Id.* ¶ 11. Officer Woolley had a K-9 or police dog with him on a type of leash

that gave him control over the dog. *Id.* ¶ 21. According to Gill, when the officers arrived, Officer Woolley immediately screamed expletives at Gill and commanded him to get on the ground. *Id.* ¶ 12. Gill alleges that he did not attempt to flee or resist and that he complied with Officer Woolley's command, by "slowly, and with no sudden movements, getting off the chair to get to the ground in a peaceful manner." *Id.* ¶ 14. Gill alleges that as he was complying with Officer Woolley's commands, Officer Woolley "commanded, allowed, incited, and/or caused the dog that was under his control and dominion to viciously bite [Gill]'s calf causing significant and severe injuries." *Id.* ¶ 16.

As further alleged in the Amended Complaint, Gill was facing the ground as Officer Woolley "commanded or allowed the dog to use force on [Gill] that was unnecessary and excessive." *Id.* ¶¶ 17–18. According to Gill, the dog bit him for at least twenty seconds, while Officer Woolley "stood over [Gill] still in control of the dog" but did nothing to abate or stop the attack. *Id.* ¶ 19. Gill alleges that he did nothing to cause Officer Woolly to be "irate, angry, to provoke, or to release a K9" onto him. *Id.* ¶ 20. Gill claims that bodycam video footage shows that the dog could not have attacked Gill but for the actions and/or inactions of Officer Woolley. *Id.* ¶ 22. After the incident, Gill was transported to Northwest Medical Center. *Id.* ¶ 24. And, according to the Amended Complaint, on August 22, 2023, the Broward County State Attorney's office filed a "Notice Pursuant to (Criminal) Rule 3.220(b)(4)" advising that Officer Woolley was under investigation due to an allegation of "Excessive Use of Force." *Id.* ¶ 25.

### B.  The Instant Action.

On April 1, 2025, Gill filed a Complaint in the Seventeenth Judicial Circuit Court, in Broward County, against the City and Officer Woolley for alleged constitutional violations

pursuant to 42 U.S.C. § 1983. *See generally* ECF No. 1-2. On May 9, 2025, Defendants removed the action to federal court. [ECF No. 1]. On May 16, 2025, Defendants filed a Motion to Dismiss the Complaint [ECF No. 5], and in response, Gill filed an Amended Complaint on May 28, 2025, pursuant to Federal Rule of Civil Procedure 15(a)(1)(B). [ECF No. 8].

In the Amended Complaint, the operative pleading, Gill asserts four causes of action against the Defendants: (1) Excessive Force pursuant to 42 U.S.C. § 1983 against the City (Count I); (2) Excessive Force pursuant to 42 U.S.C. § 1983 against Officer Woolley in his individual capacity (Count II); (3) Common Law Negligent Training or Instruction against the City (Count III); and (4) Common Law Negligence against the City (Count IV). *See generally* Am. Compl.

Defendant Officer Woolley filed an Answer and Affirmative Defenses to the Amended Complaint. [ECF No. 12]. On June 11, 2025, the City filed the Motion now before the Court seeking dismissal of Counts I, III, and IV pursuant to Federal Rule of Civil Procedure 12(b)(6). *See generally* Mot.

The Motion is fully briefed and ripe for adjudication.

## II.    LEGAL STANDARDS

### A.  Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim" showing the pleader is entitled to relief. A complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a complaint that does not satisfy the

applicable pleading requirements for "failure to state a claim upon which relief can be granted." In considering a Rule 12(b)(6) motion, the court accepts all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). However, pleadings that "are no more than conclusions[ ] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Dismissal pursuant to a Rule 12(b)(6) motion is warranted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint." *Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp.*, 208 F.3d 1308, 1310 (11th Cir. 2000) (internal quotation marks omitted) (quoting *Hishon*, 467 U.S. at 73).

### B. Shotgun Pleadings

A shotgun pleading is a complaint that violates either Federal Rule of Civil Procedure 8(a)(2) or Rule 10(b), or both. *See Fikes v. City of Daphne*, 79 F.3d 1079, 1082 (11th Cir. 1996) (discussing the purpose of Rules 8 and 10). The Eleventh Circuit has identified "four rough types" or categories of shotgun pleadings: (1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts;" (2) a complaint that contains "conclusory, vague, and immaterial facts not obviously connected to any particular cause of action;" (3) a complaint that fails to "separat[e] into a different count each cause of action or claim for relief;" and (4) a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321–23 (11th Cir. 2015) (citations omitted). "The unifying

characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323.

The Eleventh Circuit has unequivocally instructed that shotgun pleadings are "altogether unacceptable." *Cramer v. Florida*, 117 F.3d 1258, 1263 (11th Cir. 1997); *see also Cook v. Randolph County*, 573 F.3d 1143, 1151 (11th Cir. 2009) ("We have had much to say about shotgun pleadings, none of which is favorable.") (collecting cases). Indeed, the Eleventh Circuit has engaged in a "thirty-year salvo of criticism aimed at shotgun pleadings, and there is no ceasefire in sight." *See Weiland*, 792 F.3d at 1321 & n.9 (collecting cases). As the court in *Cramer* recognized, "[s]hotgun pleadings, whether filed by plaintiff or defendant, exact an intolerable toll on the trial court's docket, lead to unnecessary and unchanneled discovery, and impose unwarranted expense on the litigants, the court and the court's parajudicial personnel and resources." *Cramer*, 117 F.3d at 1263. When faced with the burden of deciphering a shotgun pleading, it is the district court's obligation to strike or dismiss the pleading, on its own initiative, and direct the plaintiff to replead to the extent possible pursuant to Federal Rule of Civil Procedure 11(b). *See Cramer* (admonishing district court for not striking shotgun complaint on its own initiative); *see also Weiland*, 792 F.3d at 1321 n.10 ("[W]e have also advised that when a defendant fails to [move for a more definite statement], the district court ought to take the initiative to dismiss or strike the shotgun pleading and give the plaintiff an opportunity to replead.").

### III.      DISCUSSION

In the Motion, the City argues that Counts I, III, and IV of the Amended Complaint should be dismissed for the following reasons: (1) Gill does not allege a "custom or policy"

as required to establish municipal liability under Section 1983 as to the excessive force claim in Count I; (2) the City is entitled to sovereign immunity as to the negligent training claim in Count III; and (3) there is no cause of action for negligent use of force under Florida law as Gill asserts in Count IV. *See generally* Mot.

For the reasons discussed below, this Court finds that Count I is due to be dismissed as a shotgun pleading and, in addition, it fails to state a Section 1983 excessive force claim; Count III for negligent training is insufficient as pled to establish whether Gill is challenging policy-level discretionary decisions barred by sovereign immunity versus operational acts not subject to sovereign immunity; and Count IV for common law negligence is due to be dismissed because Gill does not allege a distinct act of negligence committed by Officer Woolley to support a separate negligence claim in conjunction with a claim for excessive use of force.

### A. *Count I – 42 U.S.C. § 1983 Excessive Force Claim.*

In Count I, Gill alleges that Officer Woolley, acting under color of state law as a law enforcement officer employed by the City, used excessive force on Gill in violation of Gill's Fourth Amendment rights by commanding, allowing, inciting or causing the K-9 police dog to bite or attack Gill without justification. *See* Am. Compl. ¶ 27. Gill further alleges that the City encouraged or condoned the use of excessive force by its officers, through its custom, policy, or practice regarding K-9s and that these alleged customs and practices were the moving force behind Gill's constitutional deprivation. *See id.* ¶¶ 29–34. Gill also alleges that the City inadequately trained and/or supervised its officers with deliberate indifference to the rights of individuals, like Gill, in such situations. *See generally id.* ¶¶ 37–41.

1.   Count I Is A Shotgun Pleading.

As a preliminary matter, Count I is subject to dismissal as a shotgun pleading. Review of the allegations in Count I of the Amended Complaint reveals that Gill attempts to assert three distinct causes of action, including excessive use of force, negligent supervision, and negligent training, within a single count in violation of Federal Rule of Civil Procedure 10(b). *See* Am. Compl. ¶¶ 27–42. For example, in Count I, Gill alleges that the City "encouraged or condoned its officers and agents['] . . . use of excessive force without just cause as the above listed actions were in accord with [the City's] policies for use of K9s and force." *Id.* ¶ 29. In that same count, Gill further alleges that the City "inadequately trained and/or supervised its deputies and police officers" and that such "inadequate training included severely deficient, or nonexistent, policies, programs or training concerning the use of K9s or police dogs" and that the "failure to train and/or supervise was the cause or was a cause of the constitutional violation(s) suffered by [Gill]." *Id.* ¶¶ 37, 40.

Count I is a quintessential shotgun pleading because it "commits the sin of not separating into a different count each cause of action or claim for relief." *Weiland*, 792 F.3d at 1322–23; *see also Novak v. Cobb Cnty. Kennestone Hosp. Auth.*, 74 F.3d 1173, 1175 & n. 5 (11th Cir. 1996) (referring to a complaint that pleaded multiple causes of action in a single count as "a quintessential 'shotgun pleading'"); *Bickerstaff Clay Prods. Co. v. Harris Cnty.*, 89 F.3d 1481, 1485 n.4 (11th Cir. 1996) ("The complaint is a typical shotgun pleading, in that some of the counts present more than one discrete claim for relief.").

A claim for excessive use of force pursuant to Section 1983 is separate and distinct from a claim for negligent supervision and from a negligent training claim. *See, e.g., Bowe v. City of Hallandale Beach*, No. 16-CIV-60993, 2017 WL 5643311, at * 3 (S.D. Fla. Jan. 24, 2017)

7

(Dimitrouleas, J.) (dismissing claim for negligent training or supervision as a shotgun pleading because the single count pleads two separate causes of action). These separate causes of action have different elements that must be separately pled in separate counts. *See* Fed. R. Civ. P. 10(b). Therefore, Count I is subject to dismissal as a shotgun pleading. The Court now turns to the City's argument for dismissal of Count I.

2. <u>Count I Fails To State A Claim For Municipal Liability Under § 1983</u>.

In the Motion, the City argues that Count I fails to state a claim for excessive force because the Amended Complaint is devoid of substantive factual allegations establishing either an express policy or custom or a *de facto* or long-standing (unwritten) policy, custom or practice of unconstitutional excessive force regarding the deployment of the City's K-9 police dogs. Mot. at 2–4

Any person acting under the color of state law who violates a constitutional right of another is liable for the injured party's losses. *See* 42 U.S.C. § 1983. This liability applies to a municipality when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury[.]" *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 694 (1978). However, "a municipality cannot be subjected to § 1983 liability based upon theories akin to *respondeat superior*[;] . . . only deprivations arising from municipal custom or policy can result in municipal liability." *Anderson v. City of Atlanta*, 778 F.2d 678, 685 (11th Cir. 1985) (internal citations omitted) (citing *Monell*, 436 U.S. at 694). In other words, "[w]hen an injury is inflicted as the result of governmental policy or custom, the government is responsible under § 1983." *Id.*

To adequately state a claim for municipal liability under § 1983, a plaintiff must plead (1) that their constitutional rights were violated, (2) the municipality had a "custom or policy that constituted deliberate indifference to that constitutional right," and (3) that policy or custom caused the violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). And to allege a "custom or policy," a plaintiff must plead either "(1) an officially promulgated policy or (2) an unofficial custom of practice shown through the repeated acts of a final policymaker for the county." *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir. 2003). To meet the "deliberate indifference" standard, a plaintiff must allege that "the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998).

In the Amended Complaint, Gill alleges, in a conclusory manner, that the City "had a policy, custom, or practice of allowing its police officers to use excessive force." Am. Compl. ¶ 33. In his Response, Gill argues that the Amended Complaint sets forth the "express policy" that is the moving force behind the alleged constitutional violation. Resp. at 4–5.

As an initial matter, Gill has not alleged an "officially promulgated policy" at all, such as an ordinance, resolution, or an administrative order. Because the Amended Complaint does not identify any officially promulgated policy in the City of Margate, this Court finds that Gill has failed to allege an official policy. *See Moore v. Miami-Dade Cnty.*, 502 F. Supp. 2d 1224, 1231 (S.D. Fla. 2007) (holding that the plaintiff failed to plead an official policy by not identifying "any County ordinance, resolution, or administrative order"); *see also Mighty v. Miami-Dade Cnty.*, No. 14-23285-CIV, 2015 WL 5031571, at *5–6 (S.D. Fla. June 9, 2015) (O'Sullivan, M.J.), *report and recommendation adopted*, 2015 WL 5031968 (S.D. Fla. Aug. 25,

2015) (Moreno, J.), *order clarified*, 2016 WL 754772 (S.D. Fla. Feb. 24, 2016), *aff'd in part, appeal dismissed in part*, 659 F. App'x 969 (11th Cir. 2016) (holding that plaintiff did not plead facts that could establish the existence of a county-wide "policy or custom" encouraging or allowing police officers to shoot innocent and unarmed civilians); *Pierre v. City of Miramar, Fla., Inc.*, 537 F. App'x 821, 827 (11th Cir. 2013) (affirming the dismissal of a section 1983 claim against a municipality where the complaint alleged that the city "had a policy or custom," but made no factual allegations supporting the existence of such a policy or custom).

Therefore, Gill may only proceed against the City by alleging "an unofficial custom or practice . . . shown through repeated acts of a final policymaker[.]" *Moore*, 502 F. Supp. 2d at 1230 (quoting *Grech*, 335 F.3d at 1329). This custom must be a "widespread practice that . . . is so permanent and well settled as to constitute a custom or usage with the force of law." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (cleaned up) (quoting *St. Louis v. Praprotnik*, 485 U.S. 112 (1988)). As the custom must be widespread and repeated, "random acts or isolated incidents are insufficient to establish a custom[.]" *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986); *see also Casado v. Miami-Dade Cnty.*, 340 F. Supp. 3d 1320, 1328 (S.D. Fla. 2018) (O'Sullivan, M.J.) ("[T]he plaintiff must allege a 'pattern' of excessive force including specific facts of numerous incidents[.]"). To establish a pattern, the plaintiff must show other incidents involving facts "substantially similar to the case at hand." *See Bowe v. City of Hallandale Beach*, No. 0:16-CIV-60993, 2017 WL 5643304, at *5 (S.D. Fla. Aug. 7, 2017) (Dimitrouleas, J.); *see also Gurrera v. Palm Beach Cnty. Sheriff's Office*, 657 F. App'x 886, 893 (11th Cir. 2016) ("A pattern of similar constitutional violations is ordinarily necessary.") (cleaned up) (quoting *Craig v. Floyd Cnty.*, 643 F.3d 1306, 1310 (11th Cir. 2011)).

10

Moreover, the plaintiff must allege that the final policymaker for the county "know[s] about [the custom] but failed to stop it." *Brown*, 923 F.2d at 1481.

In his Amended Complaint, Gill attempts to allege other similar and prior incidents involving the City's officers to show that a pattern exists but offers no factual allegations regarding such incidents. *See* Am. Compl. ¶ 41 (alleging "[d]ue to similar, and prior, incidents involving officers and personnel, [the City] was on notice . . . of the need [to] train . . . in the area of use of force . . ."). These allegations fail to identify specific instances forming a persistent and widespread practice as necessary to establish an unofficial custom that caused a constitutional injury and, therefore, are insufficient to establish the City's liability under Section 1983. *See McCants v. City of Mobile*, 752 F. App'x 744, 748 (11th Cir. 2018) (affirming dismissal of claims against city because factual allegations did not "raise a right to relief above the speculative level" where allegations of widespread issues were unsupported and where no "specific" ordinance, rule, or regulation was identified); *see also Sanchez v. Miami-Dade Cnty.*, No. 06-21717-CIV, 2007 WL 1746190, at *3 (S.D. Fla. Mar. 28, 2007) (King, J.) (holding that unsupported "vague allegation[s]" are insufficient to plead a policy, custom, or practice).

Therefore, Count I is also subject to dismissal for failure to state a claim for municipal liability under Section 1983 because Gill fails to allege either that the alleged constitutional injury was caused by an officially promulgated policy, or that it was caused by an unofficial custom or practice of the City shown through the repeated acts of a final policymaker for the City.

### B. Count III – Negligent Training Claim.

The City seeks dismissal of Gill's negligent training claim on grounds of sovereign immunity. In support, the City argues that how the City trains its police officers, and what

subject matter the City chooses to include in that training, is a discretionary function and is therefore barred by sovereign immunity. In his Response, Gill asserts that he does not seek to hold the City liable for discretionary functions, but rather for operational acts, including the City's "implementation of the referenced policies and training," as alleged in paragraphs 48 and 49 in the Amended Complaint. Resp. at 7.

It is well-established that policy decisions regarding the training and the subject matter included in training are "discretionary" governmental functions covered by sovereign immunity. *Cook ex rel Estate of Tessier v. Sheriff of Monroe Cnty.,* 402 F.3d 1092, 1118 (11th Cir.2005). By contrast, challenges to the implementation of a training program are "operational" acts not subject to sovereign immunity. *Mercado v. City of Orlando,* 407 F.3d 1152, 1162 (11th Cir. 2005). Consequently, to state a viable negligent training claim, the plaintiff must allege that the municipality "was negligent in the implementation or operation of a training program already in effect." *Simmons v. Fla. Dep't of Corr.*, No. 5:14-cv-438, 2015 WL 3454274, at *8 (M.D. Fla. May 29, 2015).

Turning to the allegations in Count III, Gill challenges the City's failure to "implement its training and instruction programs and procedures to police officers to ensure that they adequately, reasonably, and responsibly performed their duties not to harm or abuse the public, including . . . the application of excessive force with K9s and police dogs." Am. Compl. ¶ 49. The Amended Complaint fails to include supporting factual allegations for the negligent training claim as, based on the conclusory allegations, it is unclear whether and to what extent Gill is challenging policy-level decisions regarding training, or the implementation of the City's training policies.

As noted above, to the extent that Gill's claim challenges discretionary acts, they are barred by the doctrine of sovereign immunity. To the extent, however, that Gill attempts to assert a claim related to the implementation of a specific training program that is already in place, this involves an operational act and therefore would not be barred by sovereign immunity. As the Amended Complaint is currently pled, it is unclear whether and to what extent Gill asserts an implementation claim in Count III, as he does not allege that the City failed to implement a *specific* training program or a *particular* policy with respect to a particular officer. *See, e.g.*, *Vasconez v. Hansell*, 871 F. Supp. 2d 1339, 1344 (M.D. Fla. 2012) (finding negligent training claim adequate where it challenged training provided to specific officers).

Therefore, Count III is due to be dismissed, and Gill will be permitted leave to replead a negligent training claim to include necessary factual allegations to support such a claim.

### C. Count IV – Common Law Negligence.

In Count IV, Gill asserts a claim for negligence stemming from Officer Woolley's actions or inactions with respect to the K-9 police dog. Specifically, Gill alleges that the City owed him a duty to maintain its police dog in "a reasonably safe manner while encountering [Gill] and not allowing it to attack or injure [him]." Am. Compl. ¶ 52. According to Gill, the City breached this duty, through Officer Wolley, by (a) commanding or inciting the dog to attack Gill; (b) permitting the dog to bite or attack Gill even while the dog was on a restraint or leash; (c) failing to stop or mitigate the biting or attack; (d) failing to maintain control over the dog in a reasonably safe manner; (e) failing to use reasonable care in the handling, controlling, or supervision of the dog; and (f) allowing the attack knowing of the propensities of this dog to attack or bite in these situations. *Id.* ¶ 53.

13

In the Motion, the City argues that Count IV should be dismissed because negligent use of excessive force does not exist under Florida law. Mot. at 6.  As the Eleventh Circuit has explained, "Florida courts have consistently and unambiguously held that 'it is not possible to have a cause of action for negligent use of excessive force because there is no such thing as the negligent commission of an intentional tort.'" *Secondo v. Campbell*, 327 F. App'x 126, 131 (11th Cir. 2009) (quoting *City of Miami v. Sanders*, 672 So. 2d 46, 48 (Fla. 3d DCA 1996)); *see also Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1294 (11th Cir. 2009) (holding that "it is inapposite to allege the negligent commission of an intentional tort, such as the use of excessive force"). Notwithstanding the foregoing, "a separate negligence claim based upon a distinct act of negligence may be brought against a police officer in conjunction with a claim for excessive use of force, . . . [but] the negligence component must pertain to something other than the actual application of force during the course of arrest." *Sanders*, 672 So. 2d at 48 (citation omitted).

In his Response, Gill relies on *McKinley v. Gualtieri*, 338 So. 3d 429 (Fla. 2d DCA 2022), in support of his negligence claim against the City. As the City points out in its Reply, *McKinley* is distinguishable because that case involved allegations that a deputy was negligent in handling a K-9 dog that bit a bystander at a public event. *Id.* at 431. Unlike the plaintiff in *McKinley*, Gill was not a bystander who happened to find himself within a foreseeable zone of risk created by the officials acting on behalf of a state agency. Rather, Gill's negligence claim is predicated upon the alleged intentional use of excessive force to effectuate his arrest.

Therefore, Count IV fails to state a claim for common law negligence. *See Casado v. Miami-Dade Cnty.*, 340 F. Supp. 3d 1320, 1331 (S.D. Fla. 2018) (holding that the "plaintiff's gross negligence claim also fails to state a cause of action since negligent use of excessive force

does not exist under Florida law"). Stated differently, Count IV is not based upon a distinct act of negligence by Officer Woolley to support a separate negligence claim in conjunction with a claim for excessive use of force. *See Sanders*, 672 So. 2d at 48 (citation omitted). Therefore, the City's Motion is due to be granted as to Count IV.

>   **D. Leave To Amend**.

Finally, this Court notes that Gill has not requested leave to amend. Nevertheless, this Court finds that it is possible that a more carefully drafted pleading including additional factual support may satisfy the pleading requirements as to *some* of the causes of action discussed above. "Generally, where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (cleaned up). However, leave to amend is not available nor warranted where amendment would be futile. *See Spaulding v. Poitier*, 548 F. App'x 587, 594 (11th Cir. 2013) (holding that there was no abuse of discretion in denying plaintiff leave to amend his complaint because such an amendment would have been futile (citing *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007))); *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004) (observing that courts "properly deny leave to amend the complaint under [Federal Rule of Civil Procedure] 15(a) when such amendment would be futile . . . [such as] 'when the complaint as amended is still subject to dismissal.'" (first citing *Foman v. Davis*, 371 U.S. 178, 182 (1962); and then quoting *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999))).

Gill could satisfy the applicable pleading requirements with a more carefully drafted pleading including additional factual support as to Counts I and III, but given Gill's

allegations regarding the circumstances under which he was attacked, amendment of the negligence claim in Count IV would be futile. Mindful that courts "should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), this Court concludes that Gill should be permitted an opportunity to file an amended complaint to correct the deficiencies discussed as to Counts I and III if facts to support such amended allegations do exist.

### IV.    CONCLUSION

Accordingly, for the reasons set forth above, it is

**ORDERED AND ADJUDGED** as follows:

1.  The City's Motion to Dismiss [**ECF No. 13**] is **GRANTED** as set forth below.

2.  Counts I and III of the Amended Complaint are **DISMISSED WITHOUT PREJUDICE** to Plaintiff repleading the allegations in conformance with this Order.

3.  Count IV of the Amended Complaint is **DISMISSED WITH PREJUDICE**.

If Plaintiff intends to file a second amended complaint, he shall do so within **fourteen (14) days** of the date of this Order. Defendants shall file a combined response or separate answers in accordance with the applicable Local Rules and the Federal Rules of Civil Procedure.

**DONE AND ORDERED** in Chambers in the Southern District of Florida, this 21st day of March, 2026.

_____
**MELISSA DAMIAN**
**UNITED STATES DISTRICT JUDGE**

16